# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

APOLLO MEDICAL, INC.,     )
            )
   Plaintiff,      )
            )
  vs.         )   **Case No. 4:09CV1380JCH/MLM**
            )
KATHLEEN SEBELIUS,[1]    )
**Secretary of the United States Department** )
**of Health and Human Services,**   )
            )
   Defendant.     )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Kathleen Sebelius, Secretary of the United States Department of Health and Human Services ("Defendant") denying the claim submitted for payment of services under Title XVI of the Social Security Act, 42 U.S.C. §§ 1395 et seq., ("Medicare Act" or "Medicare") filed by Plaintiff Apollo Medical, Inc., ("Plaintiff"). The parties have each filed a Motion for Summary Judgment.[2] Docs. 24, 30. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Doc. 39.

---

[1] Kathleen Sebelius is currently the Secretary of Health and Human Services. Therefore, the court has substituted Kathleen Sebelius as the defendant in this suit pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] Document 34 is Defendant's Response to Plaintiff's Motion for Summary Judgment. Document 38 is Plaintiff's Reply to Defendant's Response. Document 35 is Plaintiff's Response to Defendant's Motion for Summary Judgment. Defendant has not filed a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment.

# I.
## PROCEDURAL HISTORY and BACKGROUND

Medicare Part A is a hospital insurance program covering certain care to inpatients at facilities such as hospitals and skilled nursing facilities, as well as hospice and home health care. 42 U.S.C. §§ 1395c-1395i-5. Plaintiff, a home health agency certified to participate as a Medicare provider, initially submitted the Medicare Part A claims, which are at issue in the matter under consideration, to Medicare contractor Cahaba GBA Midwest ("Cahaba"). On or about November 29, 2007, Cahaba denied the claims on the ground that they were not covered. Administrative Record ("A.R.") 265. On December 26, 2007, Plaintiff requested a redetermination. A.R. 208. On February 19, 2008, Cahaba issued notice of its redetermination decision again denying the claims. A.R. 200-203. Plaintiff appealed to First Coast Service Options, the Qualified Independent Contractor ("QIC")[3] in this case, for further review of the claims. A.R. 133-138. On May 19, 2008, the QIC, which consisted of a panel of clinical experts including a physician, rendered a decision upholding the denial, finding that Plaintiff was responsible for the denied charges. A.R. 126-131. On July 15, 2008, the Office of Medicare Hearings and Appeals received Plaintiff's request for hearing. On September 15, 2008, a telephone hearing was held before an Administrative Law Judge ("ALJ").[4] A.R. 320-375. By decision dated October 14, 2008, the ALJ found that Plaintiff had not satisfied the applicable coverage criteria

---

[3] The Centers for Medicare & Medicaid Services ("CMS") and the Department of Health and Human Services ("HHS") administer the Medicare Program through private contractors. 42 U.S.C. § 1395h, 1395u. The contractors, usually insurance companies, are responsible for making an initial determination whether to pay claims under Part A or B on the basis of Regulations, other policies articulated by the Secretary, and information submitted by the provider. 42 U.S.C.§ 1395ff(a)(1). A provider dissatisfied with the initial determination is entitled to request a redetermination by QIC. 42 U.S.C. § 1395ff(c)(3)(B)(i); 42 C.F.R. § 405.968.

[4] If the provider remains dissatisfied with the decision and the amount in controversy exceeds a certain threshold amount, the provider may request a hearing before an ALJ. 42 U.S.C. § 1395ff(d)(1)(A); 42 C.F.R. §§ 405.1000; 405.1002.

for reimbursement under Part A for the home health services and that Plaintiff remained liable for the denied charges. A.R. 7-13. Plaintiff subsequently requested that the Medicare Appeals Council ("MAC") review the ALJ's decision.[5] On February 10, 2009, the MAC adopted the ALJ's decision. A.R. 3-4. The MAC upheld all of the previous appeal determinations. A.R. 3-4. Thus, the decision of the MAC stands as the final decision of the Secretary and is subject to review by a federal district court.[6] On April 13, 2009, Plaintiff filed its Complaint against the Secretary in the United States District Court for the District of Columbia. On August 31, 2009, the case was transferred to the United States District Court for the Eastern District of Missouri.

## II.
## STANDARD OF REVIEW

A federal court's review of the final decision of the Secretary is subject to the provisions of 42 U.S.C. § 405(g), which provides that "[t]he findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (incorporated into the Medicare statute by 42 U.S.C. § 1395ff(b)(1)(A)); 42 C.F.R. § 405.730. The standard of review applicable to a final decision of the Secretary denying reimbursement for services provided pursuant to Medicare Part A is as follows:

> Judicial review of the Secretary's decision is governed by the Administrative Procedure Act (APA), 5 U.S.C. 706(2)(A). Shalala v. St. Paul-Ramsey Medical Center, 50 F.3d 522 (8th Cir.1995). Under the APA, the Secretary's decision shall be set aside if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or contrary to law. Federal court review is de novo, id. at 527, but is limited to the administrative record.

---

[5]     If the provider still remains dissatisfied, it may appeal to the MAC. 42 C.F.R. § 405.902, 405.1100.

[6]     42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 405.1130, 405.11.36. Also, an amount in controversy amount must be met for review by a federal district court. Currently this amount is $1,220. 42 U.S.C. § 1395ff(b)(1)(E)(i); 42 C.F.R. § 405.1006(e).

> The plain meaning of a statute controls, if there is one, regardless of an agency's interpretation. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). If there is ambiguity in a statute that an agency has been entrusted to administer, however, the agency's interpretation is controlling when embodied in a regulation, unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute." Id. at 843-44, 104 S.Ct. at 2782. An agency's interpretative rules, which are not subject to APA rulemaking procedures, are nonbinding and do not have the force of law. Ramsey Medical Center, 50 F.3d at 528 n. 4.

Hennepin County Med. Ctr. v. Shalala, 81 F.3d 743, 748 (8th Cir. 1996). See also Univ. of Iowa Hosps. and Clinics v. Shalala, 180 F.3d 943, 949 (8th Cir. 1999).

A court will reject an "agency's interpretation of its own regulations only if it is 'plainly erroneous or inconsistent with the regulation.'" Id. (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945); Stinson v. United States, 508 U.S. 36, 45 (1993)). "Nevertheless, an agency may not interpret a regulation so as to violate a statute." Id. (citing United States v. LaBonte, 520 U.S. 751, 756-66 (1997)). If the Secretary's finding is supported by substantial evidence, it is must be affirmed. Univ. of Iowa Hosps., 180 F.3d at 950. "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the [Secretary's] conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d

1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the Secretary's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Where factual matters were decided by ALJ, it is the ALJ's function to weigh the evidence as he or she is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").

A final decision of the Secretary which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; ; Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). To determine whether the Secretary's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole. Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

**III.**
**FACTS** [7]

The Medicare Beneficiary ("Beneficiary") in the matter under consideration was fifty-four years of age during the dates of service in question.  The impression from an MRI of the lumbar spine which the Beneficiary had on May 11, 2006, was "broad-based disc protrusion with mild spinal canal stenosis" at L3-4; "broad-based disc protrusion" at L4-5; and "broad-based disc protrusion associated with bilateral neuroforminal encroachment" at L5-6. A.R. 72.  The impression from an MRI of the left knee which the Beneficiary had on May 11, 2006, was "cartilaginous defect with subchondral marrow edema in the posterior portion of the medial femoral condyle" and "no meniscal or ligamentous tear." A.R. 71.  The impression from an MRI of the right knee which the Beneficiary had on May 12, 2006, was "degenerative tear in the body of the medial meniscus associated with cartilage loss in the medial femoral articulation"; "partial tear in the proximal portion of the anterior cruciate ligament"; and "joint effusion." A.R. 73.

On May 15, 2007, the Beneficiary was diagnosed with sciatica, diabetic neuropathy, chronic back pain, and spinal stenosis at the Myrtle Hilliard Davis Comprehensive Health Centers, Inc.  On May 19, 2007, Laila Hanna, M.D., gave a verbal order to Plaintiff regarding physical therapy for the Beneficiary.  On May 19, 2007, the order was written on a form by the therapist who received it.  Both the therapist and Dr. Hanna signed the order form, which stated:

> P.T. 1W1, 2W8 for evaluation & treatment, assess pain and teach pain reduction tech., teach home safety, US to lumbar region @ 1.0-2.0 w/cm2 x 8-10 min fl by manual massage x5 min., transfer trng, gait & stair training, provide assistive device as the need arises.

A.R. 272.

---

[7]     The facts are undisputed unless otherwise stated.

Plaintiff transcribed the order in the Outcome and Assessment Information Set ("OASIS") as follows:

> P.T. 1W1 2W8 for evaluation and treatment, assess for pain and instruct in pain reduction techs; instruct in HEP, teach home safety, US to lumbar region @1.0-2.0 w/cm2 x 8-10 minutes followed by manual massage x5 minutes transfer training, gait and stair training, provide assistive device as need arises.

A.R. 285.

Dr. Hanna stated, on a Home Health Care Certification and Plan of Care, dated June 19, 2007, that the Beneficiary's Goals/Rehabilitation Plans were:

> ESTABLISH/UPGRADE HEP. PT. WILL DEMONSTRATE INDEP. IN PAIN REDUCTION THECHS. PT WILL DEMONSTRATE FAIR OBSERVANCE OF BODY MECHANICS IN TRNSFERRING, WILL DEMONS. DECREASED POSTURAL DEVIATION W/INC. TRUCK FLEXIBILITY. WILL DEMONS. 3/5, ENDURANCE FOR DISTANCES OF 90-100 FEET W/IMPROVED GAIT PATTERN, LEVEL SURFACES. PT. WILL BE INDEP. W/HOME SAFETY.LTG'S [4-5WKS] PT. WILL BE INDEP. W/UPGRADED HEP. PT. WILL NAVIGATE 12 FLIGHT OF APT. STEPS W/CANE AND SBA. PT. WILL DEMONSTRATE A REDUCTION OF PAIN TO A LEVEL OF 1-2/10, ... PT. WILL DEMONS. 3/5, ENDURANCE FOR DISTANCES OF 200-300 FT. [DISTANCE TO THE CAR AND NEEDED FOR SHORT-COMM. TRIPS/DISTANCES]. PT. WILL REPORT IMPROVED EMOTIONAL ENERGY AND SLEEP PATTERNS WHEN A TOLERABLE PAIN LEVEL IS STABILIZED.

A.R. 93-94.

The record contains two pages from a "Physical Therapy Assessment" form for the Beneficiary, which pages are numbers "14 out of 18" and "15 out of 18." A.R. 91-92. Under "Current Finding/Gait Evaluation," this form states that the Beneficiary used a cane and that he "Needed Assistance." A.R. 91.

The "Home Bound Status" portion of the OASIS states as follows: "Taxing effort to leave home. [must rest after 90 ft]; Refusal to leave home due to depression. Pain that is not easily relieved." A.R. 273. The OASIS further states as follows:

29. Medical or Treatment Regimen Change Within Past 14 Days:
Has this patient experienced a change in medical or treatment regimen (e.g., medication, treatment, or service change due to new or additional diagnosis, etc.) within the last 14 days.

Yes.

What changed:

Pt. was referred to HC for P.T. for pain management and improve level of mobility.
Pt. refuses to leave home due to depressive behaviors/lacking emotional energy and interest.

A.R. 274.

Additionally, the OASIS states that prior to his receiving the physical therapy at issue, the Beneficiary received assistance from his "primary care giver" "once daily"; that the Beneficiary's primary diagnosis was "physical Therapy Nec."; that his other diagnosis included "lumbago, difficulty in walking, polyarthritis nos-unspec, and depressive disorder nec"; that "[p]rior to this episode, [the Beneficiary] was able to endure community trips, was driving at times"; that he lived "[w]ith a friend"; that the Beneficiary said his pain was 8 on a scale of 0-10; and that his functional limitations included endurance and ambulation. A.R. 275-77, 280, 282.

Plaintiff provided the Beneficiary with ten physical therapy sessions. The Beneficiary missed nine scheduled appointments. In particular, a physical therapy note dated May 17, 2007, states that when the Beneficiary was called after he missed an appointment, the Beneficiary requested to reschedule. A.R. 290. A physical therapy note dated May 22, 2007, states that "pt was not seen this date due to no answer to several calls." A.R. 291. A physical therapy note dated May 24, 2007, states that "Pt refused P.T. visit because they are in the process of moving to a new residence." A.R. 292. A physical therapy note dated June 1, 2007, states that the Beneficiary missed his appointment because he "forgot about doctor's appointment." A.R. 294. A physical therapy note dated June 15, 2007, states that the Beneficiary missed his session because he had a doctor's appointment. A.R. 298.

A physical therapy note dated June 20, 2007, states that "Pt was cancelled today due to personal matter." A.R. 299. A physical therapy note dated June 25, 2007, states that "Pt requested to re-schedule sep visit 6/30/07. (Still in the process of moving to a new house.)" A.R. 301. A physical therapy note dated July 2, 2007, states that "Pt was not seen this date due to no answer to phone calls. (Last conversation with pt. had info. that they are in the process of moving to a new residence.)" On July 17, 2007, the Beneficiary was discharged from physical therapy and an OASIS discharge form was completed. A.R. 309-319.

In letter dated September 24, 2007, Dr. Hanna stated:

> This letter is to certify the medical necessity of providing skilled physical therapy for the patient, [the Beneficiary]. This request is to assist with the plan of care to address decline in ambulatory status, flexibility and coordination, strength and endurance, as well as an increased pain level in the lumbar area. Additionally, a loss of sleep and increased anxiety level has occurred due to the above deficits. ... The goal of these skilled interventions and modalities is to return the patient to his prior level of safe functioning so that he may feel confident in performing his activities of daily living.

A.R. 24.

# IV.
## APPLICABLE STATUTES, REGULATIONS, and LEGAL FRAMEWORK

Reimbursement for home health services is contingent upon a showing that the beneficiary is confined to the home, under the care of a physician, in need of skilled services, and under a plan of care. 42 C.F.R. § 409.42. In relevant part, the applicable Regulation states:

> To qualify for Medicare coverage of home health services, a beneficiary must meet each of the following requirements:
>
> (a) Confined to the home: The beneficiary must be confined to the home or in an institution that is not a hospital, SNF or nursing facility ...
>
> (b) Under the Care of a physician. The beneficiary must be under the care of a physician who establishes the plan of care....

(c) In need of skilled services. The beneficiary must need at least one of the following skilled services as certified by a physician in accordance with the physician certification and recertification requirements for home health services under § 424.22 of this chapter.

* * *

(2) Physical therapy services that meet the requirements of § 409.44(c).

* * *

(d) Under a plan of care. The beneficiary must be under a plan of care that meets the requirements for plans of care specified in § 409.43.

(e) By whom the services must be furnished. The home health services must be furnished by, or under arrangements made by, a participating HHA.

42 C.F.R. § 409.42.

42 U.S.C. § 1395f(a)(8) provides that a beneficiary is confined to his or her home if the individual:

> has a condition, due to illness or injury, that restricts the ability of the individual to leave his or her home except with the assistance of another individual or the aid of supportive device (such as crutches, a cane, a wheelchair, or walker), or if the individual has a condition such that leaving his or her home is medically contraindicated. While an individual does not have to be bedridden to be considered "confined to his home", the condition of the individual should be such that there exists a normal inability to leave home and that leaving home requires a considerable and taxing effort by the individual. Any absence of an individual from the home attributable to the need to receive health care treatment, including regular absences for the purpose of participation in therapeutic, psychosocial, or medical treatment in an adult day-care program that is licensed or certified by a State, or accredited, to furnish adult day-care services in the State shall not disqualify an individual from being considered to be "confined to his home." Any other absence of an individual from the home shall not so disqualify an individual if the absence is of infrequent or of relatively short duration....

To determine whether a beneficiary is homebound, it must first be determined whether his condition is such that trips outside the home either (a) require the aid of another individual or an artificial device, or (b) are medically contraindicated. If so, a determination must be made as to whether trips outside the home: (a) require a considerable and taxing effort, and (b) are infrequent,

of a short duration, or are attributable to medical treatment. <u>Labossiere v. Sec'y of HHS</u>, 1991 WL

531922, at * 5 (D. Vt. July 24, 1991) (unreported).

42 C.F.R. § 409.42(c) requires that a physician certify, in accordance with 42 C.F.R. §

242.22, that the beneficiary is confined to his or her home.   Section 424.22, Requirements for Home

Health Services, provides, in relevant part:

> Medicare Part A or Part B pays for home health services only if a physician certifies
> and recertifies the content specified in paragraphs (a)(1) and (b)(2) of this section, as
> appropriate.
>
> (a) Certification –
>
> (1) Content of certification. As a condition for payment of home health services
> under Medicare Part A or Medicare Part B, a physician must certify as follows:
>
>     * * *
> (ii) Home health services were required because the individual was confined to the
> home except when receiving outpatient services.
>
> This Regulation is reiterated in the Medicare Benefit Policy Manual which states:
>
> In order for a patient to be eligible to receive covered home health services under
> Part A, the law requires that a physician certify in all cases that the patient is
> confined to his/her home.

Medicare Benefit Policy Manual, Chapter 7, Home Health Services, 30.1.1 (<u>available at</u> www.

cms.hhs.gov/Manuals).

42 C.F.R. § 409.42(c)(1)(i) provides that to qualify for Medicare coverage of home health

services, a beneficiary must be in need of skilled services.  The Regulations define a skilled service

is one "so inherently complex that it can be safely and effectively performed only by, or under the

supervision of, professional or technical personnel." 42 C.F.R. § 409.32(a). Medicare Regulations

further identify specific services which can qualify as skilled rehabilitative services. 42 C.F.R.

409.42(c)(1) (referring to 42 C.F.R. § 409.33). These services include, among other things: "(3) Gait

evaluation and training: Gait evaluation and training furnished to restore function in a patient whose

ability to walk has been impaired by neurological, muscular, or skeletal abnormality." 42 C.F.R. § 409.33(c)(3). The Regulations exclude certain personal care services, including services as specified in 42 C.F.R. § 409.33(13), which states as follows:

> (13) General supervision of exercises which have been taught to the patient, including the actual carrying out of maintenance programs, i.e., the performance of repetitive exercises required to maintain function do not require the skills of a therapist and would not constitute skilled rehabilitation services (see paragraph (c) of this section). Similarly, repetitious exercises to improve gait, maintain strength, or endurance, passive exercises to maintain range of motion in paralyzed extremities, which are not related to a specific loss of function, and assistive walking do not constitute skilled rehabilitative services.

42 C.F.R. § 410.60(a) provides that to receive Medicare coverage for physical therapy the beneficiary must be under a physician's care, treated under a written plan of treatment, and the services must be performed under the supervision of a physical therapist or provider. A plan of treatment requires the following elements: it is established by a physician or therapist, the plan includes the type, amount, frequency, and duration of the therapy, the diagnosis and anticipated goals are included in the plan, and the plan is made in writing by the physician or the therapist. 42 C.F.R. § 410.61.

42 C.F.R. §411.15(g) provides that custodial care, or non-skilled care, is excluded from coverage, except if it is for the palliation or management of a terminal illness. 42 C.F.R. §411.15(g). Services that are not covered include unskilled services which "are palliative procedures that are repetitive or reinforce previously learned skills, or maintain function after a maintenance program has been developed. . . . For example, services related to activities for the general good and welfare of patients, e.g., general exercises to promote overall fitness and flexibility and activities to provide diversion or general motivation, do not constitute therapy services for Medicare purposes." Medicare Benefit Policy Manual, Ch. 15, § 220.2 (available at www.cms.hhs.gov/Manuals).

# VI.
## DISCUSSION

As set forth above, the issue before the court is whether substantial evidence supports the Secretary's final determination that Plaintiff is not entitled to Medicare reimbursement for ten home health visits that it rendered to the Beneficiary. A second issue before this court is whether there is substantial evidence to support the Secretary's final determination that Plaintiff bears the financial burden for the services rendered which are at issue. Onstead, 962 F.2d at 804. Even if there is substantial evidence that would support a decision opposite to that of the Secretary, the court must affirm her decision as long as there is substantial evidence in favor of the Secretary's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

The ALJ found, in part, as follows:

The record does not support a finding that the physical therapy provided was reasonable and necessary. The Beneficiary was 53 years old during the period in question. The Beneficiary's co-morbidities included sciatica, LBP, depression, postural deviation and diabetic neuropathy. The record does not clearly support a finding that the Beneficiary required skilled physical therapy. Although the OASIS suggests some decreases in functioning, the record contains no medical evidence that supports a recent decline in function that would require skilled therapy. Additionally, the record does not contain a complete physical therapy evaluation form. There is no evidence to support that [sic] a finding that the Beneficiary's condition was such that he required skilled therapy.

The undersigned is particularly troubled by whether the Beneficiary was truly homebound within Medicare's definition. The Beneficiary missed many appointments during the period in question with a variety of excuses. The record shows that there were several appointments that did not occur because the Beneficiary was not home on that day/time and had not notified home health personnel. Another excuse given regarding the Beneficiary's refusal of home health services was that he was in the process of moving. Considering the relatively minor co-morbidities and [that] the record indicated that the Beneficiary was driving just prior to the period in question along with the missed appointments, there is serious question as to whether the Beneficiary was indeed homebound as required by Medicare to receive home health services.

There is no evidence that the Beneficiary knew or should have known that the home health services at issue would not have been covered by Medicare. Therefore, the Appellant remains liable.

A.R. 29-30.

## A.    The Home Health Visits Were Not Reasonable and Necessary:

### 1.    42 C.F.R. § 409.42(a) - Homebound:

The ALJ found that there was a "serious question" as to whether the Beneficiary was homebound as required for the health care services at issue to have been covered by Medicare. Based on this finding, the ALJ found that Plaintiff remained liable for the costs of the services at issue. Plaintiff takes issue with this finding and contends it is not supported by substantial evidence.

First, in regard to the requirement of § 242.22 that there must be physician certification, the court finds that the Regulations are clear that a physician must certify that the "[h]ome health services were required because the individual was confined to the home except when receiving outpatient services." 42 C.F.R. § 424.22(a)(1) (ii). It is undisputed that no physician ever certified that the Beneficiary in the matter under consideration was confined to his home during the relevant time period.

Second, Plaintiff takes issue with the ALJ's reliance upon the Beneficiary's missing "many" therapy appointments and upon the Beneficiary's not being at home when determining whether the Beneficiary was homebound. The court notes that the record reflects that only two appointments were missed because of doctor's appointments; the Beneficiary cancelled therapy on June 1 and June 15, due to doctor's appointments. A.R. 294, 298. Therapy notes dated May 4, June 22, May 24, and June 25, 2007, reference the Beneficiary's moving as the reason he did not keep appointments. Moreover, notes of June 20, 2007 state that Beneficiary cancelled "due to a personal matter." A.R.

299. The court finds that the ALJ properly considered the Beneficiary's missing therapy appointments upon determining that he was not homebound as the reasons he missed therapy, other than his having doctor's appointments, suggest that he was not, in fact, homebound.

Third, the court notes that the record establishes that the Beneficiary could perform many independent activities, such as grooming and toileting himself, dressing himself with minimal assistance or use of an assistive device, and riding in a car driven by another person. A.R. 275, 280-82, 287, 319. Such abilities suggest that the Beneficiary was not homebound.

Fourth, also in regard to the Beneficiary's failure to keep physical therapy appointments, non-compliance with prescribed medical treatment detracts from an assertion that a claimant is in need of such treatment. See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment is inconsistent with complaints of disabling pain).

Fifth, although the Beneficiary's use of a cane arguably meets the requirement that his travels outside of the home required the aid of an assistive device or another individual, homebound status is not established merely because a beneficiary "makes regular use of a cane." Labossiere v. Sec'y of HHS, 1991 WL 531922, at *5 (D. Vt. July 24, 1991) (unreported) ("[S]omething more than the need of assistance to be considered homebound.").

Sixth, as noted by the ALJ, the Beneficiary had relatively minor co-morbidities and the record reflects that he was driving just prior to the period in question. A.R. 29.

Based on the evidence in the record, including the medical and therapy records, and with consideration of the above articulated factors, the court finds that there is substantial evidence to

support the Secretary's conclusion that there was a serious question as to whether the Beneficiary was homebound as required by Medicare to receive home health services.

##### 2. 42 C.F.R. § 409.42(c) - The Need For Skilled Service:

Pursuant to § 409.42(c), the ALJ found that there was no evidence to support a finding that the Beneficiary required skilled therapy. A.R. 29. First, Medicare regulations specify certain services which qualify as skilled rehabilitative services. See 42 C.F.R. § 409.42(c)(1); 42 C.F.R. § 409.33. These services include, among other things: "Gait evaluation and training furnished to **restore function** in a patient whose ability to walk has been impaired by neurological, muscular, or skeletal abnormality." 42 C.F.R. § 409.33(c)(3) (emphasis added). Further, the regulations specify that personal care services which do not require the skills of qualified technical or professional personnel are not skilled services. In particular, 42 C.F.R. § 409.33(13) excludes the "[g]eneral supervision of exercises which have been taught to the patient, including the actual carrying out of maintenance programs, i.e., the performance of repetitive exercises **required to maintain function do not require the skills of a therapist and would not constitute skilled rehabilitation services** ... ." (emphasis added). Thus, the relevant physical therapy regulations provide that non-skilled care is excluded from coverage, except if it is for palliation or for management of a terminal illness. 42 C.F.R. § 411.15(g). In fact, the Medicare Benefit Policy Manual, Ch. 15, § 220.2 states that services that are not covered include those which are to maintain function after a maintenance program has been developed. Examples of such excluded services provided in the Manual are services "related to activities for the general good and welfare of patients, e.g., general exercises to promote overall fitness and flexibility and activities to provide diversion or general motivation, do not constitute therapy services for Medicare purposes." Medicare Benefit Policy Manual, Ch. 15, § 220.2 (available online to all providers at www.cms.hhs.gov/Manuals). As such, the court finds, despite Plaintiff's

assertion to the contrary, that the final decision of the Secretary in regard to the need for skilled service is consistent with the applicable regulations.

Second, to the extent that Plaintiff contends that the final decision of the Secretary is flawed because the ALJ considered that the Administrative Record includes only two pages of the Beneficiary's Physical Therapy Assessment, the court notes that the record does only include numbered pages "14 of 18," and "15 of 18" from the Physical Therapy Assessment. As such, the Secretary did not err in this regard.

Third, the ALJ found that a lack of recent decline in function did not support the need for skilled therapy. A.R. 29. The physician's telephone order for physical therapy was noted as follows: P.T. 1W1, 2W8 for evaluation & treatment; assess pain and teach pain reduction techs; teach home safety; US4 to lumbar region @ 1.0-2.0 w/cm2 x 8 -1 0 minutes followed by manual massage x 5 minutes, transfer training, gait and stair training, provide assistive device as the need arises. A.R. at 272 (phone order dated May 19, 2007).

The ordered therapy also included "gait and stair training." A.R. at 272. The Regulations provided that this type of therapy is skilled if it is to "restore function." 42 C.F.R. § 409.33(c)(3). There was no evidence in the record that the Beneficiary suffered a loss of gait function that required restoration. Although the OASIS reflects that the Beneficiary had been able to ambulate independently and later required the use of an assistive device or another person, the Physical Therapy Assessment conflicts with that information and states that the Beneficiary was using a cane both at home and in the community prior to the time in question. A.R. 282, 288.

Fourth, to the extent that the physician's order included instruction in a home exercise program," such an order suggests maintaining function. As stated above, 42 C.F.R. § 409.33(13)

provides that "exercises required to maintain function do not require the skills of a therapist and would not constitute skilled rehabilitation services."

Fifth, as noted by the ALJ, while some of the OASIS elements indicated a slight decline in function, none indicated a specific loss of function to be addressed by the specific therapy ordered. A.R. 29. In this regard, the Beneficiary's OASIS states:

> Medical or Treatment Regimen Change Within Past 14 Days; Has this patient experienced a change in medical or treatment regimen (e.g., medication, treatment, or service change due to new or additional diagnosis, etc.) within the last 14 days?
>
> 1 - Yes.
>
> What changed:
>
> Pt. was referred to HC for P.T. for pain management and improve level of mobility. Pt. refused to leave home due to depressive behaviors/lacking emotional energy and interest.

A.R. at 274.

Sixth, to the extent Plaintiff contends that the ALJ failed to cite authority for the finding that there was no "recent decline in function," the court notes that any failure by the ALJ in this regard does mean that the ALJ did not consider applicable statutes, regulations, rules or guidelines. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Moreover, the ALJ's failure to cite legal authority does not require reversal, because the record supports her overall conclusion. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir.2006) (citing Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003)).

Seventh, to the extent Plaintiff contends that the ALJ erred in finding that the care provided to the Beneficiary did not represent skilled care and that the restorative care provided to the

Beneficiary was skilled physical therapy, the ALJ did not rely entirely on this factor and did not base the final decision on this factor. To the extent the ALJ and/or the MAC erred in this regard, such an error does not require setting aside the final decision of the Secretary because the final determination of the Secretary is supported by substantial evidence. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir.2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citing Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003)).

Eighth, to the extent Plaintiff contends that the Secretary's final decision does not consider the Beneficiary's MRIs, the court notes that the MRIs of May 2006 were over a year old at the time the Beneficiary had the physical therapy at issue.

Ninth, to the extent Plaintiff contends that the final decision of the Secretary disregarded the expert opinion of the Beneficiary's treating doctor and the opinions of the experienced home health care professionals employed by Plaintiff, the opinion of the treating physician should be given great weight only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate the record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is giving controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record

as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). In regard to Dr. Hanna's September letter in which she made the conclusory statement, post treatment, that skilled physical therapy was a medical necessity for the Beneficiary, such a conclusory opinion can be discounted if contradicted by other objective evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan 239 F.3d at 961. Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

In any case, it is the role of the Secretary to ultimately determine whether services provide were reasonable and necessary. See 42 U.S.C. § 1395y(a) (designating excluded services as those which are not reasonable and necessary).

Tenth, as suggested by Plaintiff, an OASIS is required for payment under 42 C.F.R. § 484.55. To the extent Plaintiff contends, however, that the OASIS contradicts the final decision of the Secretary, the regulations do not reflect that an OASIS is a planning tool. Rather, an OASIS is a data collection tool for reporting performance data by home health care agencies. See 64 Fed. Reg. 3764-01 (Medicare and Medicaid Programs: Comprehensive Assessment and Use of the OASIS as Part of the Conditions of Participation for Home Health Agencies).[8] To the extent Plaintiff suggests that

---

[8]     64 Fed. Reg. 3764-01 provides:

SUMMARY: This final rule revises the existing conditions of participation that home health agencies (HHAs) must meet to participate in the Medicare program. Specifically, this rule requires that each patient receive from the HHA a patient-specific, comprehensive assessment that identifies the patient's need for home care and that meets the patient's medical, nursing, rehabilitative, social and discharge planning needs. In addition, this final rule requires that as part of the comprehensive assessment, HHAs use a standard core assessment data set, the "Outcome and Assessment Information Set" (OASIS) when evaluating adult, non-maternity patients. **These changes are an integral part of the Administration's efforts to achieve broad-based improvements in the quality of care furnished through Federal programs and in the measurement of that care**.

(emphasis added).

the final decision of the Secretary should have given controlling weight to the OASIS, Plaintiff is misguided as 42 U.S.C. § 409.44, Skilled Services Requirement, provides:

> (a) General. The intermediary's decision on whether care is reasonable and necessary is based on information provided on the forms and in the medical record concerning the unique medical condition of the individual beneficiary. **A coverage denial is not made solely on the basis of the reviewer's general inferences about patients with similar diagnoses or on data related to utilization generally but is based upon objective clinical evidence regarding the beneficiary's individual need for care**.

(emphasis added).

Based on the evidence in the record, including the medical and therapy records, and with consideration of the above articulated factors, the court finds that substantial evidence supports the Secretary's conclusion that the Beneficiary's condition was not such that he required skilled therapy. Further, the court finds that substantial evidence supports the Secretary's determinations that the physical therapy which the Beneficiary received was not reasonable and necessary and that the record does not support a finding that the Beneficiary was homebound as required by Medicare. As such, the court finds that substantial evidence supports the final decision of the Secretary that the ten physical therapy sessions which Plaintiff provided the Beneficiary are not covered by Medicare.

**B.       Plaintiff Bears the Financial Burden For Providing the Uncovered Services:**

42 U.S.C. § 1395pp and 42 C.F.R. § 411.406 provide that liability for non-covered care can be waived for both the provider and the beneficiary if it can be demonstrated that the party in question did not know or have reason to know that the services were non-covered. 42 U.S.C. § 411.406 states:

---

It further states that "[w]e wish to make it clear that the OASIS is not intended to constitute a complete comprehensive assessment. Rather, the data set comprises items that are a **necessary part of a complete comprehensive assessment and are essential to uniformly and consistently measuring patient outcomes**." Id. at 2771-72.

(a) Basic rule. A provider, practitioner, or supplier that furnished services which constitute custodial care under 411.15(g)or that are not reasonable and necessary under 411.15(k) is considered to have known that the services were not covered if any one of the conditions specified in paragraphs (b) through (e) of this section is met.

(b) Notice from the QIO, intermediary or carrier. The QIO, intermediary, or carrier had informed the provider, practitioner, or supplier that the services furnished were not covered, or that similar or reasonably comparable services were not covered.

(c) Notice from the utilization review committee or the beneficiary's attending physician. The utilization review group or committee for the provider or the beneficiary's attending physician had informed the provider that these services were not covered.

(d) Notice from the provider, practitioner, or supplier to the beneficiary. Before the services were furnished, the provider, practitioner or supplier informed the beneficiary that

      (1) The services were not covered; or

      (2) The beneficiary no longer needed covered services.

(e) Knowledge based on experience, actual notice, or constructive notice. It is clear that the provider, practitioner, or supplier could have been expected to have known that the services were excluded from coverage on the basis of the following:

      (1) Its receipt of CMS notices, including manual issuances, bulletins, or other written guides or directives from intermediaries, carriers, or QIOs, including notification of QIO screening criteria specific to the condition of the beneficiary for whom the furnished services are at issue and of medical procedures subject to preadmission review by a QIO.

      (2) Federal Register publications containing notice of national coverage decisions or of other specifications regarding noncoverage of an item or service.

      (3) Its knowledge of what are considered acceptable standards of practice by the local medical community.

Based on these provisions the ALJ found, and the MAC affirmed, that the Beneficiary had no reason to know that the home health services at issue were not covered by Medicare and that Plaintiff bears the financial burden for providing the covered services.

First, the court notes that, as a participant in the Medicare program, Plaintiff had "a duty to familiarize [itself] with the legal requirements for payment." See United States v. Mackby, 261 F.3d 821, 828 (9th Cir. 2001) (quoting Heckler v. Cmty Health Servs. of Crawford County, Inc., 467 U.S. 51, 63 (1984)). Indeed, "[p]rotection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of the law." Mackby, 261 F.3d at 828 (quoting Heckler, 467 U.S. at 63).

Second, to the extent Plaintiff contends that the ALJ and/or the MAC did not offer any explanation for this conclusion and to the extent Plaintiff contends that the ALJ and/or the MAC did not offer a factual or legal basis for the conclusion that Plaintiff is liable for the noncovered charges, as discussed above, the ALJ's failure to do so does not require this court to set aside the ALJ's decision where it is supported by substantial evidence. See Karlix, 457 F.3d at 746. In any case, the failure of an ALJ to specifically address certain facts does not suggest that these facts were not considered. See Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). Moreover, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. See Moore, 413 F.3d at 721 n.3; Montgomery, 69 F.3d at 275.

Third, as discussed above, the court must give deference to the Secretary's interpretation of the above statutory provisions. See Univ. of Iowa Hosps., 180 F.3d at 949.

Fourth, because the Beneficiary in the matter under consideration did not keep approximately half of his appointments and because when he failed to keep these appointments he was not at home, Plaintiff reasonably was on notice that the Beneficiary was not "confined to home" so as to be eligible for skilled home health care services.

Fifth, Plaintiff does not dispute that it was aware of the applicable statutes and Regulations; rather, it disputes the finding that it should have known that the Beneficiary was not eligible. <u>See</u> <u>Willowood of Great Barrington, Inc. v. Sebelius</u>, 638 F. Supp.2d 98, 118-19 (D. Mass. 2009) (upholding the Secretary's final decision that the provider should have known that the services were excluded from coverage).

The court finds, therefore, that the final decision of the Secretary that Plaintiff is liable for the services provided to the Beneficiary is supported by substantial evidence and that her decision in this regard is consistent with the applicable Regulations, statutes, and case law.

## VII.
## CONCLUSION

For the reasons articulated above, the court finds that substantial evidence on the record as a whole supports Secretary's final decision; that the Secretary's final decision should be affirmed; and that, therefore, the Motion for Summary Judgment filed by Plaintiff should be denied and that the Motion for Summary Judgment filed by the Secretary should be granted.

Accordingly,


**IT IS HEREBY RECOMMENDED** that the Motion for Summary Judgment filed by Plaintiff be **DENIED**; Doc. 30


**IT IS FURTHER RECOMMENDED** that the Motion for Summary Judgment filed by the Secretary be **GRANTED**. Doc. 24


The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good

cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 23rd day of  April, 2010.